JOURNAL ENTRY AND OPINION
Layesha Reid ("Mother") [dob 11-6-71], the mother of five children[1] (namely: Michelle Reid [dob 6-20-90], Jerome Timothy Reid [dob 7-25-91], Deasha Jasmine Reid [dob 9-26-92], Kaddisha Reid [dob 3-1-94], and Desiree Reid [dob 9-26-95], collectively known as "five Reid children"), appeals from the order of the trial court which terminated the parental rights of Miss Reid and granted permanent custody of the five Reid children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons adduced below, we affirm.
A review of the record on appeal indicates that a Complaint concerning the children was filed by CCDCFS on December 19, 1995, alleging that the five Reid children mentioned previously were dependent and neglected, as defined pursuant to R.C. 2151.03 (C) and 2151.04 (C). In that Complaint it was alleged that: (1) Mother was unable to maintain a stable residence due, in part, to money management problems, and she and the children were currently facing eviction; (2) CCDCFS had been involved with the family for approximately one year, in which time Mother had not participated with parenting classes, drug assessments, maintaining housing through local public housing [CMHA], and attending Early Intervention relative to Michelle and Jerome; (3) Michelle was not attending school regularly; (4) Mother did not comprehend the need for CCDCFS involvement with her family; (5) paternity had not been established with any of the children and the alleged fathers did not contribute any care or support for the children on a consistent basis; (6) protective supervision was required for the five younger Reid children in order to ensure their receiving proper parental care; (7) despite reasonable efforts to prevent the removal of the children from the home, that removal was in the best interest of the children.
On February 22, 1996, the matter was heard by the trial court. In the journal entry of May 13, 1996, the trial court noted that the parties stipulated to the allegations contained in the Complaint and then heard evidence. The court found that the allegations were proven by clear and convincing evidence and found the six children to be dependent and neglected. The court then proceeded, without objection, to a dispositional hearing and committed Khaleef to the legal custody of the maternal grandmother Pricilla Reid. The court left the legal custody of the five Reid children with Mother with CCDCFS to provide protective supervision. The court then ordered a case plan to be filed and the matter continued for a legal custody review before Magistrate Strunk.
Magistrate Strunk heard the custody matter on November 14, 1996, and found that: (1) there had not been substantial compliance with the case plan by Mother; (2) placement of the children is not appropriate; (3) continued supervision is necessary; (4) Mother had lost her housing and was being asked to move from a friend's house. Magistrate Strunk recommended that protective supervision be extended to June 19, 1997. The trial court approved the Magistrate's findings and recommendations on March 18, 1997.
On January 22, 1997, CCDCFS filed a motion to modify legal custody relative to Michelle and Jerome Reid, seeking to have the legal custody of the two children changed from Mother. CCDCFS sought to have Michelle Reid placed with the maternal grandmother, Pricilla Reid, and Jerome Reid placed with a maternal cousin, Darlene Hodge (aka Smith). In the accompanying affidavit of CCDCFS social worker Aliyah Reese, dated January 16, 1997, it was averred that: (1) Mother had failed to meet the goals of the case plan since February 22, 1996, and was unable to provide adequate care for the children, placing the children at risk; (2) Mother continues to have a drug problem and has failed to complete a drug assessment or undertake drug treatment; (3) Mother has not maintained a stable residence, moving three times since February of 1996, and never acquiring her own housing; (4) Mother lacks adequate parenting skills and has not participated in a recommended parenting program; (5) in August of 1996, Mother placed Michelle with Pricilla Reid, and placed Jerome with Darlene Hodges; (6) the putative father's whereabouts were unknown and they failed to provide care and support; (7) reasonable efforts were made by CCDCFS to prevent removal of the children from the home, but it was in the children's best interests for the modification of custody.
Also on January 22, 1997, CCDCFS filed a motion to modify protective supervision to temporary custody with regard to Deasha, Kaddisha, and Desiree Reid. In the accompanying affidavit of CCDCFS social worker Aliyah Reese, the averments in the affidavit mentioned in the preceding paragraph were repeated, adding that Mother does not assist with the care of Michelle and Jerome, and rarely visits the two children in the care of others.
On September 12, 1997, CCDCFS filed a motion for order of pre-adjudicatory temporary custody and removal in the matter of Kaddisha and Desiree Reid, alleging that the children were in immediate danger from their surroundings and removal was necessary to prevent immediate or threatened physical or emotional harm. In the accompanying affidavit of CCDCFS social worker Aliyah Reese, she averred that: (1) Since February 22, 1996, Mother had failed to meet the goals of the case plan and was unable to provide adequate care for the children; (2) Mother has failed to receive a drug assessment and drug treatment and continues to abuse drugs; (3) Mother has been unable to maintain stable housing and has not been available to the social worker to supervise the care of the children; (4) the putative fathers of the children have not established paternity and have not provided care or support for the children. The social worker stated that the children could return to the home if, pursuant to the case plan, Mother obtained drug treatment, stable housing, and followed through with services. Also on September 12, 1997, CCDCFS filed a motion for preadjudicatory order for temporary custody relative to Michelle, Jerome, and Deasha Reid on the same basis as the other motion for pre-adjudicatory order. An affidavit by the social worker accompanied the motion repeating the averments from the other affidavit, adding that since August of 1996, the children had been living with relatives and Mother had not assisted in the care or support of the children, nor did she visit the children. The trial court granted this motion and ordered that, pursuant to Juv.R. 13 (A), Michelle, Jerome, and Deasha be committed to the emergency custody of CCDCFS pending further hearing.
On February 22, 1998, CCDCFS filed a motion to modify temporary custody of the five Reid children to permanent custody for CCDCFS. The accompanying affidavit of the social worker, Aliyah Reese, alleged the following: (1) that Mother has failed to comply with the case plan designed for the reunification of Mother with her children; (2) Mother has a drug problem and has failed to complete recommended drug treatment which prevents her from parenting and providing and caring for the children on a regular basis; (3) none of the putative fathers, despite being instructed to do so, have established paternity, nor do they care or provide for the children; (4) the putative fathers have not complied with a case plan designed to unify them with their children; (5) Mother and the putative fathers have failed to cooperate with the assistance provided by CCDCFS designed to assist them in reunification, also Mother and fathers are not presently, or in the foreseeable future, ready to parent the children; (6) that permanent custody is in the best interests of the children in that (a) the children are in need of a legally secure placement, (b) the children are age-appropriate in which to derive positive benefits from a permanent placement and there is a reasonable probability that they will be afforded a permanent home, (c) the children have been placed outside the home for nearly one year and parents have failed to demonstrate the ability to have the children reunified, and (d) the relatives do not desire custody of the children.
The guardian ad litem for the children, attorney Ross Paul, submitted his report dated September 28, 1998.
The motion to modify temporary custody to permanent custody was heard on December 8, 1998, by the trial court.
At this December 8, 1998, hearing, the trial court heard the testimony of the appellant-Mother and the social worker, Aliyah Reese.
Mother testified that: (1) Michelle, Jerome, and Deasha were removed from her home in 1996, and Kaddisha and Desiree were removed in 1997; (2) she had moved numerous times since the Agency became involved with her family in 1994; (3) none of the putative fathers provided care or support for the Reid children; (4) she is unemployed; (5) she has partially completed her case plan; (6) she has completed phase I of the drug treatment program under the case plan, has approximately five to six weeks of phase II remaining, then has to complete the aftercare phase in phase III; (7) she does not visit her children every day; (8) despite admitting to not being in a position to care for her children that, if reunited with her children, she will provide for them somehow; (9) she has been living in the same home for approximately one-and-one-half years with her present boyfriend, Kevin Lunder; (10) she been with Mr. Lunder for two years, since he was discharged from the military after eight years of service; (11) Mr. Lunder "keeps her in line" (Tr. 31); (12) her drug of choice was marijuana, smoking approximately "a blunt a day," and she has been "clean" since November 5, 1998[2] (Tr. 32); (13) she claimed that, if reunified with her children, that babysitting services could be arranged by her while she worked; (14) she did not see her children at all in November of 1998, but did see them on the Wednesday before the hearing date; (15) excluding the month of November, 1998, she did not see Kaddisha, Desiree and Jerome on a regular basis because they were in foster care (i.e., relatives); (16) despite Mr. Lunder's participation not preventing the removal of the children from the home approximately two years ago, the witness claimed that he was now willing to help with the children should the children be returned to Mother's care. At the close of Mother's testimony, the trial court accepted the stipulation that Mr. Lunder, had he testified, would have testified to the opinion that Miss Reid was a "great mom" and that he was there to help her. (Tr. 41.)
The social worker testified that: (1) she agreed that Mother was not in a position to care for the children; (2) she agreed that Mother has made some progress on the case plan; (3) Mother does have housing presently; (4) even with assistance by the CCDCFS, it would be difficult for Mother to maintain and provide for the children; (5) Michelle was living with the grandmother, Jerome was living with a maternal aunt, Deasha was living with a paternal aunt; (6) Mother has limited involvement with Jerome, providing most of her support time to Michelle; (7) Deasha's father is incarcerated; (8) none of the fathers presently provides support or care for the children; (9) Mother should complete the drug treatment program, and the reunification of the five children with Mother would hinder the effort of Mother to complete the drug treatment; (10) Mother has not remedied the original conditions which caused the removal of her children, and these conditions continue to exist presently; (11) it would be in the children's best interest that permanent custody be granted to CCDCFS; (12) Mother claimed that she quit her job in order to complete the drug treatment program; (13) the drug treatment program would last approximately five-to-six additional months; (14) phase III of the drug treatment program consists of meetings of three hours per day, twice a week, for a three-month period; (15) the children, despite knowing Mother as "mommy," exhibit some apprehension toward Mother when they are together; (16) two of the children, Jerome and Kaddisha, have behavioral problems, mainly at school which has harmed their educational performance; (17) she would not recommend that the three children (Michelle, Deasha, Desiree) be reunified with Mother separately from the remaining two children because Mother's past performance on the case plan was not adequate when Mother had two children living with her, and it could cause the two remaining children (Jerome and Kaddisha) to be confused and worsen their behavioral problems; (18) while Mother's current spurt of progress in complying with the case plan is not irrelevant, the fact remains that Mother has not completed the conditions of her two-year case plan, despite a number of continuances and second chances.
In its January 12, 1999, journalized ruling granting the motion for permanent custody[3], the court stated in pertinent part the following:
 "The court, having received the appropriate reports, finds that the children are not abandoned or orphaned and cannot or should not be placed with either parent within a reasonable period of time as follows: Mother and alleged father have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. The alleged fathers of children has (sic.) failed to establish paternity, does not provide support, does not visit, does not communicate with the children. The Mother has failed to attend and successfully complete her referred services as set forth in the case plan in an attempt to reunify her with children. The Mother has a drug problem which prevents her from reunifying with her children. The court finds that the children's (sic.) return to the home would be contrary to their best interest and welfare. The court finds that reasonable efforts were possible to be made to prevent placement and to make it possible for the children to return to the home. For findings as to services provided by Cuyahoga County Department of Children and Family Services and why they were not successful see the case plan. The court further finds that there are no relatives willing or able to care for said children at the present time. It is, therefore, ordered that said children be committed to the permanent custody of the Cuyahoga County Department of Children and Family Services. Cleveland School District to bear costs of educating said children. Amended case plan to be filed. Guardian ad litem report filed and approved. Matter to be continued for custody review hearing before Magistrate Wochna. Order for temporary custody is now terminated."[4]
Within the record is a supplemental report, ordered by the trial court at the close of the hearing testimony and prepared by the Guardian ad litem, dated December 30, 1998 (approximately three weeks after the trial court had signed its journal entry, but two weeks prior to the journalization of that order), in which the Guardian reports in pertinent part:
 "Since this case was last in Court on 12-8-98, in front of the Honorable Robert A. Ferreri, and at the Court's request, further investigation has been made. The mother has appeared to have worked her case plan and is doing remarkably better than she has in the past. She appears to have genuine concern for her children and has even contacted me by phone to see what the status of the case was. I informed her that I was impressed at the progress that she has made since I first met her. All of the children want to be with their mother, I believe that this desire is genuine and that the mother could take care of all of her children with continued agency involvement in the family. The problem is and will continue to be in the future, the care of Khaddisha (sic.), who has severe behavioral problems, an attachment disorder and an eating disorder. The child is going to take a lot of time and patience to care for into the immediate future and quite possibly for the rest of her life. As I stated in my earlier report this could be problematic because of the mother's past drug history and the fact that she only really began working on her case plan in Ernest (sic.) after CCDCFS filed for permanent custody. It must be noted that this family has been involved with CCDCFS since 1995.
 "This is really a close call. I am impressed at the progress the mother has made, but it appears she had to be pushed and prodded over a three (3) year period and only got serious about her case plan this year. But she has and appears to be continuing in personal growth and responsibility. The only way I could recommend reunification is if there was continued agency involvement and if the mother had some specific training dealing with Khaddisha's problems. The Fact (sic.) that the mother had to have her back completely against the wall to truly take her case plan seriously bothers me, if this mother were to relapse after the children were returned, the consequences to the children could be disastrous. It is with reluctance that I recommend that Permanent Custody be granted to CCDCFS." (Italicization added.)
The notice of appeal was filed on February 10, 1999, from the order of January 12, 1999.
The lone assignment of error provides:
I
 THE LOWER COURT'S DECISION TO TERMINATE THE APPELLANT-MOTHER'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN.
The following was stated by this Court in In re Awkal (Cuyahoga, 1994), 95 Ohio App.3d 309, 315-317:
 "A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, citing Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. Parents have a fundamental liberty interest in the care, custody and management of a child. In re Murray, supra, citing Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. However, the rights and interests of natural parents are not absolute.
 "R.C. 2151.413 permits a public children services agency that has had temporary custody of a child for at least six months to file a motion requesting permanent custody of a child.
 "R.C. 2151.414 (B) provides that a court may grant a motion for permanent custody if the court determines, by clear and convincing evidence, that (1) permanent custody is in the best interest of the child and (2) the child cannot be placed with either of his parents within a reasonable period of time or the child should not be placed with his parents. Both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. R.C. 2151.414 (C) prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents.
* * *
 "In determining whether permanent custody is in the best interest of a child, R.C. 2151.414 (D) requires the juvenile court judge to consider all factors that are relevant to the best interests of the child, * * *
 "R.C. 2151.414 (D) is written broadly and requires the juvenile court judge to consider all factors that are relevant to the best interests of the child. The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as whether to terminate parental rights, privileges and responsibilities. The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Moreover, the knowledge the juvenile court gains at the adjudicatory hearing through viewing the witnesses and observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410-411, 461 N.E.2d 1273, 1276; cf. Miller v. Miller (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142
(defining "abuse of discretion')."
The version of R.C. 2151.414 (D) and (E) in effect at the time of the permanent custody hearing and at the time the trial court granted the motion, provides:
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code;
 "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
* * *
 "(7) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;
 "(8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
 "(9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 "(10) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety;
 "(11) The parent committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling.
 "(12) Any other factor the court considers relevant."
(Italicization added.)
Applying the abuse of discretion standard of review to the decision of the trial court, we cannot conclude that the trial court abused its discretion. A number of factors prompt this determination. First, despite the recent favorable strides taken by Mother to complete the case plan, the fact remains that Mother had not completed the case plan which had been assigned to her over two years prior to the motion hearing; thus, the conditions which precluded reunification were still present. Second, Mother was unemployed, and when asked during the motion hearing whether it was true that she was "not in a position to take care of her children, " answered, "yes." (Tr. 12.) Third, Mother admitted to not visiting the children on a regular basis, even though three of the children were living with relatives at the time. Fourth, the guardian ad litem, who is charged with representing the interests of the children, recommended, albeit reluctantly, that permanent custody be granted to CCDCFS in spite of Mother's recent improvement in meeting the case plan goals. Fifth, Mother's allegation that her boyfriend, who keeps her "in line" and would help care for the children if reunification is permitted rings hollow. The record established that, in nearly two years of their being together, this boyfriend's efforts did not prevent Mother from not regularly visiting her children or otherwise completing her case plan in a more timely manner. Sixth, there was no demonstration, apart from hearsay, that Mother's relatives wished to maintain custody of the children or otherwise help Mother care for the children if reunification were permitted. Seventh, the social worker who had been involved with the family since 1995 recommended that parental rights be terminated.
This court takes no pleasure in terminating a parent's rights with regard to that parent's children. The act of terminating a parent's rights is a social tragedy that is, sadly, all too prevalent in contemporary American life, particularly in this county. As parents ourselves, we sympathize with another parent's natural desire to maintain the normal legal relationship with his or her offspring, however we recognize that desires and good intentions by a parent, no matter how forcefully advanced or honestly held, must be placed in perspective against reality and past history in order to weigh the best interests of the children in a future context. Based on the record before us, we cannot conclude that the trial court abused its discretion in terminating the parental rights of Miss Reid as to the five Reid children.
Assignment overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court, Juvenile Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
JUDGMENT: Affirmed.
 ______________________ JAMES D. SWEENEY JUDGE
O'DONNELL, P.J. and ROCCO, J., CONCUR.
[1] The children all have different fathers. The putative fathers of the five Reid children are: (1) Michelle's father, Darrin Frazier; (2) Jerome's father, Timothy Shivers; (3) Deasha's father, Patrick Shephard; (4) Kaddisha's father, John Doe; (5) Desiree's father, John Doe. Also, Miss Reid is the mother of Khaleef Reid [dob 5-10-85; Khaleef's father, Greg Durham], however Khaleef's primary caretaker since birth has been his maternal grandmother, Pricilla Reid.
[2] This admission infers that Mother had been using marijuana during phase II of her treatment program. According to Mother, phase II consists of meeting approximately three days per week for five weeks. (Tr. 33.) Also, according to Mother, a "blunt" is a marijuana "joint" consisting of "[s]traight marijuana; it's marijuana mixed in a cigar. You cut the cigar down the middle, you empty the stuff that's in the inside of the cigar out and then fill it back up with marijuana." (Tr. 40.) Mother acknowledged that most people consider a "blunt" to refer to marijuana laced with crack cocaine, but she used only marijuana in her "blunts." (Tr. 40.)
[3] The order was dated December 8, 1998, by the trial court, but the order was journalized on January 12, 1999.
[4] R.C. 2151.414 (B) mandates that the trial court make a finding that permanent custody of the child to the agency be in the best interests of the child. In the case sub judice, the trial court phrased the required finding in the negative and placed the emphasis on "return to the home" rather than "to the agency," to wit, "[t]he court finds that the children's [sic] return to the home would be contrary to their best interest and welfare." In using this language, the court was finding that reunification was not in the best interest of the children which, by implication given the context of the hearing, is akin to finding that it is in the best interest of the children that the children stay with the agency. Although the use of this language by the trial court has not been raised as error, we conclude that the language utilized by the trial court substantially complies with the mandate of the statute and presents no reason for reversal.